NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0093n.06

No. 07-3946

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Feb 16, 2010
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| JAMIE T. JOHNSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: CLAY and GIBBONS, Circuit Judges; STAMP, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner-appellant Jamie T. Johnson appeals

the district court's denial of his 28 U.S.C. § 2255 motion. Johnson pled guilty to counterfeit charges

in violation of 18 U.S.C. § 371 and § 474 and was sentenced to sixty months imprisonment, three

years of supervised release, and a $300 fine. Johnson filed this motion to vacate, set aside, or correct

his sentence because he argued that defense counsel provided constitutionally ineffective assistance

by failing to file a notice of appeal. The United States District Court for the Northern District of

Ohio denied the motion. For the reasons that follow, we affirm.

---

[*]The Honorable Frederick P. Stamp, Jr., United States District Judge for the Northern District
of West Virginia, sitting by designation.

I.

Johnson pled guilty to three counts of counterfeit violations on November 4, 2003. The district court held a sentencing hearing on January 26, 2004, at which Johnson received a sentence of sixty months imprisonment, three years of supervised release, and a $300 fine.

On January 20, 2005, one year after sentencing, Johnson filed a *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Johnson argued that his sentencing counsel was constitutionally ineffective because, *inter alia*, counsel failed to file a notice of appeal when Johnson instructed him to do so. The district court denied the motion in all respects except for the failure-to-appeal claim, which was referred to United States Magistrate Judge William H. Baughman, Jr., for an evidentiary hearing and report and recommendation.

The magistrate judge appointed the federal public defender to represent Johnson at the hearing held on May 27, 2005. Johnson testified at the hearing, as did his sentencing counsel, David Grant. The court received an affidavit from Johnson's mother, Regina Marie Bolden, who also appeared briefly before the court.[1]

Johnson testified that he had been dissatisfied with his first court-appointed lawyer because he "felt" that the lawyer "wasn't working in [his] best interests." (Evidentiary Hearing Transcript ("Tr.") at 7.) Consequently, the district court appointed Grant to represent Johnson. Johnson testified that Grant met with him "numerous times" at the jail prior to sentencing, primarily to discuss Johnson's dissatisfaction with certain sentencing calculations—in particular, his placement

---

[1]Bolden testified only that Johnson's testimony was neither wrong nor inaccurate. Her affidavit is not part of the appellate record.

2

in criminal history category IV rather than category III.  (Tr. at 9, 17.)  According to Johnson, he considered taking the case to trial solely to preserve his right to appeal that and other sentencing issues.  Eventually, however, Grant negotiated a plea agreement that preserved Johnson's right to appeal his sentence, and Johnson agreed to plead guilty.

At the sentencing hearing, Grant objected to the calculations that were offensive to Johnson, but the court overruled the objections.  The sentencing judge then informed Johnson of his right to appeal.  According to Johnson, he and Grant had a conversation in the courtroom immediately following sentencing.  When asked on direct examination if he had told Grant to file an appeal, Johnson answered in the affirmative.[2]  At other points in his testimony, however, Johnson seemed to contradict himself.[3]  Johnson never testified that *he gave Grant* express instructions to file an

---

[2]On direct examination, Johnson was asked the following question and gave the following answer:

Q.    And just so I'm clear, did you ever ask [Grant] to file a notice of appeal on your behalf?

A.    Yes.  That was the understanding that I had, the next process was to file an appeal.

(Tr. at 21.)

[3]Also on direct examination, the following exchange occurred:

Q.    Mr. Johnson, did you ask your lawyer to file a notice of appeal on your behalf?

A.    The discussion we had was that he explained to me the situation.  We didn't get to the agreement where we thought we could get, but he told me that the next step was to appeal those issues . . . .

(Tr. at 20.)  Later, the following exchange was had on cross examination:

3

appeal. Rather, Johnson explained that *Grant told him* that "the next step was to appeal." (Tr. at 20.) Then, "a day or two after" sentencing, Johnson learned from other inmates that he had ten days to file a notice of appeal. (Tr. at 29-30.) Johnson believed that his mother was in contact with Grant at some point after Johnson was moved from jail to prison. However, Johnson himself did not contact Grant until "60 days or 90 days" after sentencing, at least fifty days after the ten-day period had passed. (Tr. at 32.) Johnson waited almost one year after sentencing to file this 28 U.S.C. § 2255 motion, well after the time to appeal had expired.

Grant also testified at the hearing. Grant agreed that he and Johnson had had "numerous discussions" prior to sentencing. (Tr. at 45.) Specifically, Grant testified that they had discussed the fact that the plea agreement preserved Johnson's right to appeal. According to Grant, he counseled Johnson that the sentencing issues "perhaps were not good issues for appeal, but [they] might be able to convince [the sentencing judge] to go [their] way." (Tr. at 47.) In contrast to Johnson's testimony that the two spoke about an appeal immediately after sentencing, Grant testified that they did not have any discussion that day. According to Grant, neither Johnson nor Bolden directed him to file

---

Q.    Did you direct [Grant] at that time to file an appeal?

A.    That is correct.

Q.    You actually told him at the date of your sentencing that you wanted an appeal filed?

A.    The exact words I can't, you know, recall, but the moral to the story was that my next step was to file an appeal on my criminal history, and that's what I wanted done.

(Tr. at 33.)

4

an appeal. Grant's own view following sentencing was that Johnson lacked nonfrivolous grounds for appeal. Grant could not recall whether Johnson contacted him after Johnson began serving his sentence.

The magistrate judge, having accepted proposed findings of fact and conclusions of law from both parties, filed a report and recommendation concluding that Johnson's motion should be granted. Applying the leading case, *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the magistrate judge reasoned that Grant knew or should have known that Johnson was interested in appealing and that Grant's failure to ask Johnson if he wanted to appeal rendered his representation constitutionally deficient.

The district court rejected the magistrate judge's recommendation. The court found that Johnson's testimony was "contradictory and inconsistent," while Grant's testimony was "clear and consistent." *Johnson v. United States*, No. 1:05 CV 101, slip op. at 8 (N.D. Ohio July 16, 2007). Consequently, the court found that Johnson's claim that he asked Grant to file an appeal was not credible. Applying *Flores-Ortega*, the district court concluded that Grant's performance was not deficient because Grant consulted with Johnson about an appeal, but Johnson never expressly instructed Grant to file an appeal. Alternatively, the district court found that Johnson could not demonstrate prejudice because Johnson had not offered sufficient evidence that there was a reasonable probability that he would have appealed.

Johnson timely appealed the denial of his 28 U.S.C. § 2255 motion.

II.

We review a district court's denial of a 28 U.S.C. § 2255 motion *de novo*. *See Benitez v.*

5

*United States*, 521 F.3d 625, 630 (6th Cir. 2008). The district court's findings of fact, however, are reviewed for clear error. *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003).

A.

Ineffective assistance of counsel claims are reviewed under the now-familiar *Strickland* test. *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007). *See generally Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show that (1) counsel's performance was objectively unreasonable and (2) counsel's unprofessional errors prejudiced him. *Id.* at 688, 694. The *Strickland* test applies to claims that counsel was ineffective for failing to timely file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000); *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003).

In *Flores-Ortega*, the Supreme Court "reject[ed] a bright-line rule that counsel must always consult with the defendant regarding an appeal." 528 U.S. at 480. Rather, defense counsel's obligation depends on the totality of the circumstances. *Id. Flores-Ortega* identified a spectrum of scenarios in which the defendant could complain that counsel failed to appeal. *Id.* at 477. At one extreme is the case in which the defendant expressly instructs his lawyer to file a notice of appeal and the lawyer fails to do so. *Id.* Counsel's conduct in this situation is objectively unreasonable. *Id.* At the other end of the spectrum is the case in which the defendant expressly instructs his lawyer *not* to file a notice of appeal and the lawyer follows his instructions. *Id.* In this situation, counsel's performance is objectively reasonable. *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

Where the defendant has not given his lawyer express instructions, a reviewing court must ask whether counsel "consulted" with the defendant about an appeal. *Id.* at 478. In this context, the

6

Supreme Court defined consultation as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If counsel has consulted with his client, then counsel cannot be found to have acted unreasonably unless he ignored his client's express wishes. *Id.* If, on the other hand, counsel has not consulted with his client, then counsel's failure to consult is unreasonable if (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In determining whether counsel's failure to consult was reasonable, a court must consider "all the information counsel knew or should have known." *Id.* Factors to consider include "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* However, even in cases involving a plea of guilty, the reviewing court "must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

In sum, *Flores-Ortega* sets forth a three-part sequential analysis. First, we must determine whether the defendant gave counsel express instructions regarding an appeal. Second, if we find that the defendant did not provide express instructions, then we must determine whether counsel consulted with the defendant about an appeal. Finally, if there was no consultation, then we must decide whether the failure to consult was objectively unreasonable.

7

B.

Applying *Flores-Ortega* to the case at bar, our first inquiry is thus whether Johnson gave Grant express instructions to file an appeal. The district court found Johnson's testimony on this point to be inconsistent and thus not credible, a finding to which we must defer. *See Richards v. United States*, 301 F. App'x 454, 457 (6th Cir. 2008). Even if, however, we assume for the sake of argument that Johnson's testimony was credible, Johnson could not commit to having asked Grant to file an appeal. Although he initially answered "Yes" when asked if he had instructed Grant to file an appeal (Tr. at 21), when pressed he was unable to testify to having said anything to Grant. Rather, Johnson testified that *Grant explained to him* that "the next step was to appeal."[4] (Tr. at 20, 33.) Johnson understood this to mean that "that's what [he] wanted done." (Tr. at 33.) Even if believed, however, this testimony would establish only that Grant mentioned an appeal to Johnson, not that Johnson expressly instructed Grant to file an appeal. This is consistent with Grant's testimony that neither Johnson nor his mother ever expressly instructed him to file an appeal.

Because Johnson did not give Grant express instructions, we must next determine whether Grant consulted with Johnson about an appeal. Johnson and Grant agreed that they had "numerous" discussions prior to sentencing. (Tr. at 9, 45.) These conversations centered around Johnson's objections to certain sentencing calculations. Over the course of several months, Grant explained to Johnson that the objections might succeed at the trial level but were unlikely to win on appeal.

---

[4]Grant disputed this version of events, testifying that no conversation at all occurred after the sentencing hearing.

8

Therefore, considering all the facts, we find that Grant consulted with Johnson about an appeal—that is, he "advis[ed] the defendant about the advantages and disadvantages of taking an appeal, and ma[de] a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478; *see Spence v. United States*, 68 F. App'x 669, 671 (6th Cir. 2003). In this case, the fact that consultation occurred in the course of the case rather than after sentencing is not determinative. Although the better practice is always to confer with the client after sentencing, regardless of the discussion that has preceded it, we cannot say that *Flores-Ortega required* Grant to do so under the facts here.

After the sentencing court overruled Grant's objections to the presentence report, the court went on to inform Johnson of his right to appeal. At this point, Johnson was fully informed both of his right to appeal and of the slim chance of success on appeal. Under these circumstances, it was reasonable for Grant to expect a specific request to appeal from Johnson, if Johnson in fact wanted to appeal. *Flores-Ortega*, 528 U.S. at 478. As discussed above, however, Johnson never expressly instructed Grant to file an appeal. Because Grant consulted with Johnson and Johnson never gave express instructions to file an appeal, *Flores-Ortega* compels the conclusion that Grant's actions were objectively reasonable. *See id.*

C.

Because Johnson failed to satisfy *Strickland*'s performance prong, we need not reach the question of prejudice. However, we note that Johnson likely fails on this prong as well. To show prejudice, Johnson must prove that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. The

9

question is whether Johnson "would have" appealed, not whether "his hypothetical appeal might have had merit." *Id.* at 486; *see also Hatchett v. Kapture*, 109 F. App'x 34, 37 (6th Cir. 2004). Here, the facts suggest an improbability that Johnson would have timely appealed. He knew that any appeal had little chance of success. Johnson was fully informed of his right to appeal and of the ten-day window in which to do so, yet he failed to contact Grant until two to three months after sentencing, long after the time to appeal had expired. *See Richards*, 301 F. App'x at 459 (finding insufficient probability that defendant would have appealed where defendant "did not 'promptly' express a desire to appeal within the ten-day appeal period"). Even more tellingly, Johnson waited almost a full year after sentencing to file this 28 U.S.C. § 2255 motion. *See Cross v. United States*, 73 F. App'x 864, 866 (6th Cir. 2003) (denying relief where defendant "waited nearly eight months after sentencing" before filing a § 2255 motion based on failure to file a notice of appeal). Rather than suggesting that he would have timely appealed, Johnson's actions post-sentencing indicate that he was unlikely to have done so. On these facts, we cannot say that there is a reasonable probability Johnson would have timely appealed.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

10

**CLAY, Circuit Judge, dissenting.** Because Defendant's counsel rendered ineffective assistance of counsel by failing to file a notice of appeal, I would vacate Defendant's conviction and remand for proceedings consistent with this dissent.

This Court has determined that the Constitution imposes a duty on counsel to make objectively reasonable choices both during the legal proceedings and "*after* the judicial proceeding has concluded in determining whether an appeal should be filed." *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 433 (6th Cir. 2006) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 479, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)). In addition, this Court has interpreted *Roe* as holding that "trial counsel has a constitutional duty to consult with clients about filing an appeal *after* the trial proceedings have concluded." *Id.* at 434 (emphasis added). Accordingly, the relevant question in determining whether Grant satisfied his constitutional duty is whether Grant consulted with Petitioner after the sentencing hearing. *See id.*; *see also United States v. Taylor*, 339 F.3d 973, 979 (D.C. Cir. 2003) (proceeding to analyze whether the failure to consult "itself constitutes deficient performance" after concluding that "counsel did not consult with the defendant about an appeal *after* the sentence was pronounced") (emphasis added); *United States v. Wright*, 180 F. App'x 348, 349 (3d Cir. 2006) ("[b]ecause it is undisputed that Wright's trial counsel did not consult with him regarding his right to appeal *post-sentencing*, our determination of this case is controlled by *Roe*") (emphasis added) (citation omitted). Contrary to the majority's finding, because the district court found that Grant did not consult with Petitioner *after* the adverse sentencing determination, the

district court erred in concluding that Grant satisfied his duty to consult with Petitioner by discussing his appeal prospects or right to appeal *prior to* the sentencing hearing.[1]

Because Grant failed to consult with Petitioner regarding an appeal, to determine whether Grant's failure to consult constitutes deficient performance, we must evaluate whether Grant had a duty to consult with Petitioner. *Roe*, 528 U.S. at 478-79. The Supreme Court has that "counsel has a constitutionally imposed duty to consult" when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In the instant case, it is undisputed that Petitioner consistently expressed to Grant a strong interest in preserving sentencing issues for appeal in conversations leading up to the sentencing. Through these conversations, Petitioner reasonably demonstrated to Grant that he was interested in appealing in the event of an adverse sentencing determination. Accordingly, Grant had a duty to consult with Petitioner after the sentence was pronounced.

Finally, Petitioner was prejudiced by Grant's failure to file a notice of appeal because "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an

---

[1]Furthermore, contrary to the majority's assertion, Petitioner did testify on both direct and cross-examination that he gave Grant express instructions to file an appeal. (*See* Tr. at 21 (Q: "And just so I'm clear, did you ever ask [Grant] to file a notice of appeal on your behalf?" A: "Yes. That was the understanding that I had, the next process was to file an appeal."); Tr. at 33 (Q: "Did you direct [Grant] at that time to file an appeal?" A: "That is correct.")). As the majority notes, Petitioner also testified that Grant told him that "the next step was to appeal," (*see* Tr. at 20), and that Petitioner did not remember exactly what words he used to convey to Grant his desire to appeal. (*See* Tr. at 33). However, the majority mischaracterizes these statements as contradicting Petitioner's testimony that he asked Grant to file an appeal. Accordingly, in light of Petitioner's testimony that he directed Grant to file an appeal, Grant also acted unreasonably by ignoring Petitioner's express instructions.

12

appeal, [Petitioner] would have timely appealed." *Id.* at 484. Petitioner expressed his strong interest in preserving sentencing issues for appeal in conversations leading up to the sentencing, and he testified that he was under the impression that Grant was pursuing his appeal after the sentence was pronounced. Thus, neither Petitioner's failure to contact Grant within ten days after the sentence nor Petitioner's likelihood of success on appeal support the conclusion that Petitioner would not have filed a timely notice of appeal had he known that his attorney was not pursuing an appeal on his behalf.

For the foregoing reasons, Defendant's conviction should be vacated on the basis that his counsel provided ineffective assistance. I therefore respectfully dissent.