NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0182n.06

No. 14-2334

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Mar 31, 2016

DEBORAH S. HUNT, Clerk

JAMES ALTMAN,                                    )
                                                 )
    Petitioner-Appellant,                        )
                                                 )
v.                                               )          ON APPEAL FROM THE
                                                 )          UNITED STATES DISTRICT
THOMAS WINN,                                     )          COURT FOR THE EASTERN
                                                 )          DISTRICT OF MICHIGAN
    Respondent-Appellee.                         )
                                                 )
                                                 )
                                                 )

BEFORE:    MERRITT, GIBBONS, and SUTTON, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**   James Altman, a Michigan prisoner,

appeals the district court's judgment denying his petition for a writ of *habeas corpus* under

28 U.S.C. § 2254.   The district court granted a certificate of appealability (COA) only on

Altman's ineffective assistance of trial counsel claims.   For the reasons set forth below, we

affirm the district court's judgment.

**I.**

This court summarized the facts of this case as follows:

     Altman was charged with murdering his girlfriend, Christina ("Tina")
Fisher.  At trial, Altman argued that Fisher was a passenger in his vehicle when
she opened the passenger-side door and exited the vehicle on her own accord as
he was driving down Hicks Road.  According to Altman, Fisher ultimately died
from injuries she suffered as a result of the fall.  The state argued that the physical
evidence did not support Altman's version of the events and that Altman inflicted
the injuries that killed Fisher.  The jury convicted Altman of second-degree
murder, and the trial court sentenced him to eighteen to sixty years of
imprisonment.  The Michigan Court of Appeals affirmed, and the Michigan
Supreme Court denied leave to appeal. *People v. Altman*, No. 267592, 2007 WL

2609448 (Mich. Ct. App. Sept. 11, 2007), *app. denied*, 744 N.W.2d 150 (Mich. 2008). Altman's request for post-conviction relief was denied.

After exhausting his state-court remedies, Altman filed an amended habeas petition, in which he raised five grounds for relief: (1) the prosecutor engaged in misconduct and trial counsel performed ineffectively; (2) post-conviction testimony provided by Dr. Kanu Virani, the forensic pathologist who performed the autopsy on Fisher, undermined Dr. Virani's trial testimony; (3) the post-conviction court erred by denying his request to subpoena mental-health records, upholding his conviction in spite of evidence of the unreliability of his tape-recorded statement to authorities, and demonstrating bias toward him; (4) the post-conviction court unreasonably determined that his alleged lie to a police officer could constitute evidence of his guilt, the evidence was insufficient to support his conviction, and the trial court erred by admitting certain character evidence; and (5) appellate counsel performed ineffectively.

The district court denied Altman's habeas petition, finding that several of his claims were procedurally defaulted, other claims were not cognizable on federal habeas review, and Altman was not entitled to habeas relief on the merits of his remaining claims. The district court granted a COA on Altman's ineffective-assistance-of-trial-counsel claims only.

R. 16-1, Order at 1–2, *Altman v. Winn*, No. 14-2334 (6th Cir. May 11, 2015).

The state's theory at trial was that the physical evidence was inconsistent with Altman's statements that Fisher had exited his moving car onto Hicks Road, a rural road that was at least partially dirt and gravel. At trial, the state presented testimony from doctors and nurses who treated Fisher. James Bicknell, the emergency room physician who examined her, testified that she had a skull fracture, bleeding in the brain, and brain swelling resulting from the bleeding. Bicknell also opined that Fisher had a few abrasions on the front side of her body but that she lacked the injuries and damage to her clothing that would be expected from someone who had jumped out of a car at a high speed.

Peggy Kalafut and Renee Schlaack, Fisher's emergency room nurses, testified that they didn't notice dirt or debris on Fisher. Both nurses also stated that the abrasions they observed on Fisher's body did not appear to be fresh.

Dr. Gerald Schell, Fisher's neurologic surgeon, testified that the pattern of injuries she presented was unusual. He opined that although it is not unusual in a car ejection or crash for the worst injury to be to the head, "usually we'll find other injuries like abrasions or bruising or some other evidence of other trauma than the head[,] particularly in high[-]speed injuries."

The state also presented testimony from three experts: Kyle Hoskins, a forensic scientist; Dr. Kanu Virani, a forensic pathologist; and Timothy Robbins, an accident reconstruction expert. Hoskins testified that Fisher's boots, jeans, belt buckle, and wristwatch lacked signs of damage from the gravel road. She concluded that the condition of Fisher's clothing indicated that she did not jump out of Altman's car at 45 miles per hour and further testified that she would expect to see some damage even if the vehicle had been traveling at 5 or 10 miles per hour.

Virani testified that Fisher's autopsy revealed no other injuries besides a skull fracture and that the abrasions on her body preexisted that injury or occurred in the hospital. He noted that when someone falls off a moving vehicle at 40 or 45 miles per hour onto a gravel or dirt road, there will be other injuries in addition to head trauma—visible injuries to the body parts that would contact the road like the elbows, knees, hips, and forehead. Virani concluded that based on his examination of Fisher's body and other evidence in the case, the injury pattern on Fisher's body was not consistent with falling off or jumping from a moving vehicle onto a gravel road. Finally, he stated that if the car were going much slower than 35 miles per hour, it would be unlikely that Fisher would have sustained the traumatic head injury at all.

The state's accident reconstruction expert, Timothy Robbins, corroborated these medical conclusions, noting that photos of the accident scene indicate that the gravel on the road was loose enough to show where Fisher's heels left a mark as Altman moved her to the car. Given the loose condition of the gravel, he would expect to see a lot of disturbance of it in the area

where Fisher's head and feet came to rest, but the photos do not indicate this. Robbins concluded that the absence of physical evidence on the roadway, coupled with the absence of physical evidence on Fisher's body, indicated that she did not exit Altman's moving vehicle.

In addition to testimony about Fisher's injuries and the scene at Hicks Road, trial witnesses testified about Fisher's drug use and mental instability. One witness testified that she had concerns about Fisher's drug use and mental stability and knew that Fisher had engaged in self-harming behavior. Another recalled on cross-examination an occasion where Fisher was so intoxicated she could not drive and also threatened to kill herself. A third witness described Fisher as "a very distraught individual" and remembered two occasions on which Fisher threatened to commit suicide. Finally, toxicologist Michelle Glen testified that a test of Fisher's urine indicated the presence of marijuana, amphetamine, cocaine, and Lidocaine, though she was not able to specify when Fisher might have used these substances.

Witnesses at trial also testified about Altman's speed on Hicks Road. Multiple witnesses said that Altman told them he was going 40–45 miles per hour that night. Lieutenant Gregory Hall testified that Altman told him this repeatedly during an interview, and the audio of this interview was played for the jury. Hall specified that Altman told him he was traveling roughly 40–45 miles per hour when Fisher exited his vehicle.

Defense attorney David Duke also called one witness. Curtis Caterer, Altman's accident reconstruction expert, estimated that Altman's car was going 24 miles per hour when it first began to brake and 13 miles per hour when it began to brake a second time. Caterer acknowledged, however, that the conditions on Hicks Road could have been slightly different when he conducted his testing than they had been on the night of the accident. Caterer also noted problems with the photographs taken the night of the accident and how they made accident

reconstruction calculations less exact. Finally, he mentioned a personal experience with a woman jumping out of a car he was driving that was traveling at roughly 25 miles per hour. The door swung violently open and shut, but the woman avoided the door and was able to run away.

Altman now appeals the district court's denial of his petition for a writ of *habeas corpus* on the grounds of ineffective assistance of trial counsel.

## II.

We review a district court's decision to grant or deny a *habeas* petition *de novo*. *Keys v. Booker*, 798 F.3d 442, 449 (6th Cir. 2015). On *habeas* review, an appellate court asks whether a state-court determination on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). In order for a federal court to rule on the merits of a *habeas* petition, its claims must not be procedurally defaulted. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015). The state argues that Altman procedurally defaulted his ineffective assistance of trial counsel claims and that, even if he did not, these claims do not meet the deferential standard of the Antiterrorism and Effective Death Penalty Act (AEDPA). We agree in part. All but two of Altman's ineffective assistance of trial counsel claims are defaulted and the remaining two claims are without merit.

Altman failed to raise all but two[1] of his ineffective assistance of counsel claims on direct appeal, and the orders of the Michigan state courts denying post-conviction review applied the procedural bar of Michigan Court Rule 6.508(D). Order, *People v. Altman*, 809 N.W.2d 573 (Mich. 2012); Order, *People v. Altman*, No. 303448 (Mich. Ct. App. Sept. 20, 2011); *People v.*

---

[1] In Altman's supplemental brief to the Michigan Court of Appeals on direct appeal, he raised the issue of ineffective assistance of counsel based on counsel's failure to clarify that Altman did not tell Lieutenant Hall he was traveling roughly 40–45 miles per hour at the time Fisher exited his car. Altman also raised his counsel's ineffectiveness based on his failure to object to inadmissible character evidence.

*Altman*, No. 05-2297-FC (Cir. Ct. of Midland Cnty. June 3, 2010). This rule precludes relief from judgment under Michigan Court Rule 6.500 if, among other circumstances inapplicable here, a defendant's grounds for relief could have been raised on direct appeal or the grounds for relief were decided against the defendant in a prior appeal. Mich. Ct. R. 6.508(D).

A federal court reviewing a habeas petition will not consider a claim a state court has rejected "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Trimble v. Bobby*, 804 F.3d 767, 776 (6th Cir. 2015) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). For a state procedural ground to be "adequate," it must be "firmly established and regularly followed." *Id.* (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)).

Michigan Court Rule 6.508(D)(3) precludes relief on Rule 6.500 claims that could have been raised on direct appeal, and it is firmly established and regularly followed in Michigan. As a result, default under Rule 6.508(D)(3) normally qualifies as an independent and adequate state ground barring habeas review if the state court expressly invokes the rule. *Jones v. Bell*, 801 F.3d 556, 561–62 (6th Cir. 2015); *Henderson v. Palmer*, 730 F.3d 554, 561 (6th Cir. 2013).

Altman can overcome this procedural default by showing cause and actual prejudice, however. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But because Altman cannot excuse his procedural default, all but two of his ineffective assistance of counsel claims are procedurally defaulted.

Ineffective assistance of appellate counsel can be sufficient to demonstrate cause for failure to raise an ineffective assistance of counsel claim, where "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007) (quoting *Howard v. Bouchard*, 405 F.3d 459, 485

(6th Cir. 2005)). This inquiry thus requires that we assess the merits of Altman's underlying ineffective assistance of trial counsel claims to determine whether the failure to raise them constitutes ineffective assistance of appellate counsel. *Id.*

To prove ineffective assistance of counsel, a petitioner must make two showings. First, he must demonstrate that counsel's performance did not meet "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with a reasonable probability defined as "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court need not assess counsel's deficient performance before considering prejudice, where the latter inquiry is an easier one. *Id.* at 697.

Altman alleges a number of ways in which trial counsel Duke was ineffective, including: (1) failing to obtain Fisher's mental health records, to "recognize the significance" of her mental illness and intoxication at the time of her death, and to interview related witnesses; (2) failing to "conduct any meaningful investigation," including failing to investigate the surface of Hicks Road on the night of the incident; (3) failing to recognize "fraudulent testimony and arguments presented by the prosecution"; (4) failing to interview crucial witnesses; and (5) failing to familiarize himself with police reports and witnesses' prior testimony. Even assuming for the sake of argument that Duke's performance fell below an objective standard of reasonableness, the critical issue is whether Altman can demonstrate a reasonable probability that, but for Duke's alleged unprofessional conduct, the result of the proceedings would have been different.

Altman argues that Duke's performance was so deficient as to give rise to *per se* prejudice under *United States v. Cronic*, 466 U.S. 648, 658–61 (1984), because Duke essentially

"abandoned [Altman] to the whims of the prosecutor." *Cronic* is inapplicable, however, because Duke's failure was not "complete," and the errors Altman cites "are plainly of the same ilk as other specific attorney errors [the Supreme Court held] subject to *Strickland*'s performance and prejudice components." *Bell v. Cone*, 535 U.S. 685, 696–98 (2002). Duke cross-examined the state's witnesses, garnering a number of concessions, and made a substantial and coherent closing argument, so any failure was partial at worst. Altman therefore must demonstrate that Duke's performance prejudiced him under *Strickland* in order to be entitled to relief, a burden he cannot meet.

### A.

Altman cannot demonstrate that Duke's ineffectiveness prejudiced him because he cannot show a reasonable probability that, but for Duke's failings, the outcome of his trial would have been different. Altman's ineffective assistance of trial counsel argument includes claims related to Fisher's mental health and drug use and the surface of Hicks Road. He cannot show that Duke's alleged ineffectiveness in these areas prejudiced him because the crucial question in this case was whether Fisher could have sustained her head injury from falling out of Altman's car at all. Her mental health and drug use were not probative of this question, and multiple witnesses testified that Fisher's head injury and lack of other injuries were inconsistent with her exiting Altman's moving car, regardless of the precise circumstances. Though Virani noted at the post-conviction evidentiary hearing that the surface of the road would factor into his opinion, he also observed that Fisher's injuries were inconsistent with a fall from a car, regardless of the road surface. Fisher's lack of scratches or abrasions, if the car were traveling slowly, and other injuries, if the car were traveling more quickly, indicated that she had not exited Altman's moving car. Thus, whether Duke had presented more or different evidence about Fisher's

intoxication or suicidal inclinations or the nature of the surface of Hicks Road on the night in question, there is not a reasonable probability that this evidence would have rebutted the state's argument that Altman's version of events was impossible.

Moreover, Duke did solicit much of the evidence Altman argues was lacking, further undermining the likelihood that more or different evidence would have changed the trial's outcome. Evidence about Fisher's drug use and mental health issues came out on direct and cross-examination, with witnesses testifying about her past threats to commit suicide, as well as the presence of multiple drugs in Fisher's system at the time of her injury. Duke also questioned the state's expert testimony about the surface of Hicks Road and brought out on direct examination of his expert that this might have changed between the day of the incident and when subsequent tests were conducted. Because there is not a reasonable probability that additional evidence about Fisher's background and the road surface would have affected the outcome of Altman's trial, Duke's alleged failures did not prejudice Altman.

**B.**

Altman also argues that Duke was ineffective for failing to challenge prosecutorial misconduct, to interview witnesses, to make certain objections, and to examine police reports and witnesses' prior testimony, but he does not specify how these alleged failures prejudiced him. He also does not specify which witnesses or testimony Duke should have examined outside of those relating to Fisher's mental health and drug use, which are discussed above. Altman's primary arguments seem to be: (1) Duke's failure to object to prosecutorial misconduct and character-based evidence allowed the state to attribute false motives to Altman and to misrepresent the evidence in order to suggest that Fisher's injury did not occur at Hicks Road;

and (2) Duke's failure to recognize and object to erroneous expert testimony and demonstrative exhibits deprived Altman of the evidence necessary to confirm his truthfulness.

Again, even assuming that Duke's behavior constituted ineffective assistance of counsel, Altman cannot show prejudice flowing from it. Altman argues that prosecutorial misrepresentation of facts and inadmissible character evidence allowed the state to "mov[e] the accident scene away from Hicks Road, as Hicks was consistent with Mr. Altman's statements," and to suggest that Altman had a motive to hurt Fisher, thus undercutting Altman's credibility. But, as discussed above, what most directly undercut Altman's credibility was consistent testimony from witnesses that his version of events was impossible. The state's closing argument acknowledged that the location of the incident was not an element of the offense. Even if Duke had been able to limit the evidence concerning an alternative scene for Fisher's injury and Altman's potential reasons to hurt Fisher, all of the expert testimony contradicting Altman's theory would have remained. Thus, Altman cannot show that, but for Duke's alleged shortcomings, the outcome of the trial would have been different.

Altman's claim that Duke should have done more to object to erroneous expert testimony or to use it to Altman's advantage similarly fails. First, Duke presented the testimony of an accident reconstruction expert who undercut the methods and conclusions of the state experts, and opined that Altman was going much slower than the state experts had estimated. Second, though Altman characterizes Lieutenant Tracy Thomas's report as "consistent" with Altman's statement that the incident occurred at Hicks Road and faults Duke for not questioning Thomas about the report in order to confirm Altman's truthfulness, this does not establish prejudice. As discussed above, the impossibility of Fisher's injuries from jumping out of a moving car, not the location where they were sustained, undercut Altman's credibility. Neither Thomas nor her

report concluded that jumping or falling from Altman's car could have caused Fisher's injuries. Thus, Altman cannot show prejudice based on Duke's alleged failures regarding expert testimony.

Because Altman cannot show that his trial counsel's alleged ineffectiveness in these respects prejudiced him, his appellate counsel was not ineffective for failing to raise these issues, and the majority of his ineffective assistance of counsel claims are procedurally barred.

### III.

The Michigan Court of Appeals affirmed on direct review the ruling that Altman's trial counsel was not ineffective for failing to clarify Lieutenant Hall's testimony regarding what Altman told them about the car's speed and for failing to object to inadmissible character evidence. *People v. Altman*, No. 267592, 2007 WL 2609448, at \*6–7 (Mich. Ct. App. Sept. 11, 2007). Applying the required deference under AEDPA, this decision was not "contrary to . . . or . . . an unreasonable application" of clearly established law and did not involve "an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

Altman argues that Duke failed to challenge Hall's "lie" regarding what Altman told him about his car's speed at the time of Fisher's exit and that this lie was the "essence" of the state's case. Considering this issue on direct appeal, the Michigan Court of Appeals found neither deficient performance nor prejudice, reasoning that "whether defendant was driving 40 miles and or some lesser speed was not a critical issue in the case" because "Fisher's injuries were not consistent with a fall from a moving vehicle, regardless of the speed." *Altman*, No. 267592, at \*6–7. Even assuming Duke should have challenged Hall's testimony, his failure to do so did not prejudice Altman. Multiple other witnesses testified that Altman told him he was traveling 40–45 miles per hour on Hicks Road, and at least one of those witnesses testified that Altman told

her he was traveling 40 miles per hour when Fisher exited his vehicle. Moreover, forensic pathologist Virani testified that Fisher's injuries were inconsistent with Altman's story regardless of how fast his car was going, while forensic scientist Hoskins testified that the condition of Fisher's belt buckle, watch, and clothing also did not support the theory that Fisher exited Altman's moving car, regardless of its speed. For these reasons, the Michigan court's application of *Strickland* and its determination of the facts were not unreasonable.

Altman next argues that Duke was ineffective for failing to object to certain character evidence. Though Altman's appellant brief only references a letter Fisher wrote to him and some undefined evidence relating to his "false motives," he argued to the Michigan Court of Appeals and in his *habeas* petition that other inadmissible character evidence Duke should have challenged included: (1) the testimony of Bonnie Jones, Fisher's mother, regarding her belief that Altman would harm Fisher; (2) Jones's testimony regarding Altman's presence at the hospital; (3) the "spin marks" on Fisher's lawn; (4) evidence from three witnesses—Hall, Kalafut, and Schlaack—suggesting they thought Altman was a liar; (5) evidence of infidelity; and (6) evidence that Altman refused to pay his portion of a phone bill. The Michigan Court of Appeals found that all of these claims lacked merit because the evidence was admissible under state law. Because the evidence was admissible under the Michigan Rules of Evidence, and the failure to make futile objections does not constitute ineffective assistance, Altman cannot demonstrate prejudice from Duke's failure to object to this evidence. *See Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (noting that errors in the application of state law, "especially with regard to the admissibility of evidence, are usually not cognizable" in *habeas* review unless the evidentiary ruling is "so

egregious that it results in a denial of fundamental fairness") (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)).

## IV.

For the foregoing reasons, we affirm the district court's denial of Altman's petition for a writ of *habeas corpus*.