NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0207n.06

Case No. 14-1563

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 13, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KAJUAN D. HALE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| SHERRY BURT, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

**O P I N I O N**

BEFORE: KEITH, COOK, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Kajuan Hale was convicted in state court of possession of a firearm during the commission of a felony and of second-degree murder for killing a man during a bar fight. He now brings three claims for habeas relief: (1) a due process violation for prosecutorial misconduct; (2) ineffective assistance of trial counsel for failing to object to the prosecutorial misconduct; and (3) ineffective assistance of appellate counsel for failing to raise these two issues in his second, discretionary appeal and for failing to consult with Hale about the "pros and cons" of filing such an appeal.

Hale did not object to the alleged prosecutorial misconduct at trial, and so his first claim is procedurally defaulted. Hale asserts ineffective assistance of trial counsel as cause to excuse the procedural default, but his ineffective assistance of trial counsel claim is itself procedurally

defaulted. Hale asserts ineffective assistance of appellate counsel as cause to excuse this second procedural default. However, because his trial counsel's failure to object to the prosecutor's closing argument did not prejudice Hale's defense, Hale cannot excuse either of the procedural defaults. And because Hale had no right to counsel during his second, discretionary appeal, he could not be unconstitutionally deprived of the effective assistance of appellate counsel by his attorney's failure to seek leave to appeal from the Michigan Supreme Court. Accordingly, we affirm the district court's denial of habeas relief.

## I. Background

*The Crime.* The underlying crime involves the fatal shooting of Nelson Hardiman by Kajuan Hale on March 16, 2001, in the City of Detroit. Hale and his friend Rej were playing pool at the Tippin Inn Lounge. Hardiman was also at the Tippin Inn Lounge with his cousins, Antonio Vernon and Reginald Marshall, and his friend, Steve Gresham. A dispute arose between Hale and Rej and two women at the bar over whose turn it was to play next on the pool table. Hardiman stepped into the dispute, arguing that it was the women's turn. Hale responded by pounding both of his fists on the pool table and suggesting that they take things outside.

Hale and Hardiman left the bar. Their friends soon followed. When they got outside, Vernon and Marshall saw that Hale had a gun in his hand and that Hardiman was attempting to calm Hale down. Marshall retrieved Vernon's pistol from Hardiman's car. Hale got into his van, keeping his gun on his lap, while Hardiman and Gresham continued to try to calm Hale down through the passenger-side window.

Vernon went into the bar to get his belongings. When he returned, he saw Hardiman and Hale standing in the middle of the street. He believed that the situation had ended and that everything was all right between them. Hardiman asked his cousin Marshall for his keys.

Marshall reached out to give Hardiman his keys, but when Hardiman saw that Marshall was still holding a gun, he took the gun and pistol-whipped Hale in the head. Hardiman and Hale began to fight.

Rej fired a shot into the air. Hardiman got up and started to run away, leaving Hale on the ground behind him. Hale then drew his gun and fired several shots at Hardiman. Hardiman fell to the ground. Hale stood up, walked over to Hardiman, and shot him several more times. Vernon testified that he saw Hale spit on Hardiman. Vernon and Marshall both testified that, when Hale drove away, it looked like Hale tried to run over Hardiman's body. A forensic pathologist examined Hardiman's body and identified seven gunshot wounds: three in his back, one in his left arm, two in his left leg, and one in the top of his head.

*Hale's Trials.* Hale was charged with first-degree premeditated murder and felony-firearm. Mich. Comp. Laws §§ 750.316, 750.227b. At his first trial, the jury was unable to reach a verdict, and the judge declared a mistrial. At his second trial, the jury found Hale guilty of the lesser-included offense of second-degree murder and of felony-firearm. Mich. Comp. Laws §§ 750.317, 750.227b. He was sentenced to thirty-five to sixty years' imprisonment for his second-degree murder conviction and two years' imprisonment for his felony-firearm conviction, running consecutively.

*Hale's Direct Appeals*. Hale appealed as of right to the Michigan Court of Appeals, challenging his conviction due to prosecutorial misconduct during closing argument and his sentence as disproportionate and improperly exceeding the sentencing guidelines. The Michigan Court of Appeals affirmed his conviction but remanded for resentencing on the second-degree murder conviction. Neither Hale nor the government sought leave to appeal this decision to the Michigan Supreme Court.

Hale was resentenced to twenty-eight to sixty years' imprisonment for his second-degree murder conviction; a sentence that still exceeded the guidelines' range. Hale appealed, but the Michigan Court of Appeals upheld his sentence. Hale sought leave to appeal to the Michigan Supreme Court, but was denied. He did not seek certiorari from the United States Supreme Court.

*Post-Conviction Proceedings*. Hale filed a petition for a writ of habeas corpus in federal district court on September 15, 2006, claiming that the trial court violated his rights to due process and trial by jury when it sentenced him above the guidelines' range. He then filed a motion to stay his petition so that he could exhaust several other claims in state court. The district court granted the motion.

Hale sought state collateral review of his convictions for second-degree murder and felony-firearm by filing a motion for relief from judgment in state trial court. *See* Mich. Ct. R. §§ 6.501–.509. He brought several claims, including claims for prosecutorial misconduct and ineffective assistance of trial and appellate counsel. Under Michigan law, when a claim could have been raised on direct appeal, a criminal defendant seeking collateral review must establish actual prejudice (among other things) to avoid the state's bar against granting post-judgment relief. Mich. Ct. R. § 6.508(D)(3). The state trial court noted that Hale had unsuccessfully raised his prosecutorial misconduct claim on direct review and so held that Hale had not shown actual prejudice. The Michigan Court of Appeals denied his application for leave to appeal "because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." R. 50-1, State Post-Conv. Ct. App. at 1, Page ID 1829. The Michigan Supreme Court denied Hale's application for leave to appeal for the same reason.

Hale returned to federal court with an amended petition for a writ of habeas corpus. On the recommendation of the magistrate judge, the district court denied Hale's habeas petition and denied him a certificate of appealability. Hale appealed, and this Court granted a certificate of appealability.

## II. The Standard of Review

Hale's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. §§ 2241–2266. The district court denied Hale's petition for a writ of habeas corpus. In an appeal of a § 2254 habeas action, we review the district court's legal conclusions *de novo*. *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) (citing *Dyer v. Bowlen*, 465 F.3d 280, 283–84 (6th Cir. 2006)). "Factual determinations are generally reviewed for clear error, except where the district court has made factual determinations based on its review of trial transcripts and other court records. In such cases, because no credibility determination or findings of fact are required, factual conclusions are reviewed de novo." *Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006) (internal quotation and citations omitted).

A writ of habeas corpus cannot be granted with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–413 (2000). A state court decision involves an "unreasonable

application" of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### III. The Statute of Limitations

As an initial matter, the government argues that Hale's claims are barred by AEDPA's one-year statute of limitations. Under AEDPA, the statute of limitations period begins to run from the latest of four possible dates, the relevant one here being the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Michigan Supreme Court denied Hale's application for leave to appeal on December 27, 2005. Hale then had ninety days to seek certiorari from the United States Supreme Court. *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000); Sup. Ct. R. 13.1. Hale did not seek certiorari from the United States Supreme Court. Thus, his one-year statute of limitations period began to run on March 27, 2006.

Hale filed his original habeas petition on September 15, 2006. His original petition only raised one claim: a challenge to his sentence. He subsequently filed a motion to stay, asking the district court to hold his habeas petition in abeyance so that he could exhaust additional claims in state court. The government points out now that the district court marked Hale's motion to stay as filed on March 28, 2007, one day after his statute of limitations period ended. However, Hale is a prisoner who, at the time, was representing himself. Pursuant to the federal pro se prisoner mailbox rule, Hale's motion is considered to have been filed at the time Hale delivered it to the

prison authorities for filing in the federal courts. *See Houston v. Lack*, 487 U.S. 266, 270–72 (1988); *Scuba v. Brigano*, 527 F.3d 479, 484 (6th Cir. 2007); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) ("The rationale for the rule is that the date the prisoner gives the petition to the prison can be readily ascertained, and any delays in receipt by the court can be attributed to the prison, and pro se litigants should not be penalized for a prison's failure to act promptly on their behalf." (citing *Lack*, 487 U.S. at 275–76)). Although his motion was not marked as filed until March 28, 2007, Hale swore in his certificate of service under penalty of perjury that his motion was sent via U.S. Mail on March 20, 2007. Hale then returned to federal court with an amended petition, raising his sentencing challenge and bringing new claims, including the three claims on this appeal. Thus, Hale's claims are not barred by the statute of limitations.

## IV.     Hale's Prosecutorial Misconduct Claim

Hale claims that his right to due process was violated by the prosecutor's argument to the jurors that it was their civic duty to convict Hale. During her closing argument, the prosecutor decried the "epidemic of violence in this country[,] . . . especially young African-American men killing other young African-American men about nothing." R. 25-4, Trial Tr. at 2, Page ID 1217. She stated that "[e]very part of that poison that's going on in society, it all adds up. It all makes it all go round. This is the part you're responsible for, is this man murdering another man over nothing." *Id.* at 2–3, Page ID 1217–18.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11 (1985). For a due process claim on the basis of prosecutorial misconduct, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). The misconduct must have "so infected the trial with

unfairness as to make the resulting conviction a denial of due process." *Id.* (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

**A. Hale's Civic Duty Argument includes the Prosecutor's Race-Based Statement**

The government argues that the prosecutor's race-based statement ("especially young African-American men killing other young African-American men about nothing") serves as the basis of a separate prosecutorial misconduct claim—one that had never been raised in any state court or in the district court below. However, the prosecutor's race-based and civic duty statements are not as neatly severed as the government asserts.

It is true that Hale made no specific race-based arguments before the state courts or in his habeas petition, and he did not quote the race-based statement until he filed his federal appellate briefs. Rather, he evidenced his prosecutorial misconduct claim by quoting the prosecutor's improper statement as: "We've got something going on in this society, if you watch the news, if you read the newspaper, unless your head's in the sand, you know that there is an *epidemic of violence in this country* . . . that's what this is, in the grand scheme of things." R. 30, Mich. Ct. App. Br. at 25, Page ID 1506 (omission in original). The prosecutor's complete statement, however, was:

> We, unfortunately, we've got something going on in this society, if you watch the news, if you read the newspaper, unless your head's in the sand, you know that there is an epidemic of violence in this country. *Unfortunately, especially young African-American men killing other young African-American men about nothing, because* that's what this is, in the grand scheme of things.

R. 25-4, Trial Tr. at 2, Page ID 1217 (emphasis added). By reading the prosecutor's statement in its entirety, it becomes clear that "what this is" is the prosecutor's reference to black-on-black violence. Thus, we read the prosecutor's race-based statement as further evidence of Hale's civic duty argument, not as serving as the basis of a different claim.

Notably, on direct appeal the Michigan Court of Appeals looked at the entirety of the prosecutor's statements about civic duty, *including* the race-based statement, even though Hale's brief omitted the race-based statement in quoting the prosecutor's remarks. And, in denying habeas relief, the district court below quoted the prosecutor's closing argument inclusive of the prosecutor's race-based statement. Because the race-based statement is part of the prosecution's civic duty argument and because a state court evaluated the prosecutor's statements in their entirety, we will consider the race-based statement in evaluating Hale's prosecutorial misconduct claim, but only in the context of the prosecution's civic duty argument.

### B. Procedural Default

"Generally, in order to respect state court rulings and preserve federalism principles, before a federal court rules on the merits of a petitioner's § 2254 petition: (1) the petitioner must have exhausted his available state remedies, and (2) the petitioner's claims must not be procedurally defaulted." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citations omitted). A procedural default occurs where "the last state court to render a judgment in the case rejected the claim because it was not presented in accordance with the state's procedural rules." *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004).

Pursuant to Michigan's contemporaneous objection rule, where a defendant failed to object to the prosecutor's statement in the trial court, the claim will be treated as waived and reviewed by the state appellate court only for plain error. *See Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). Here, the state court applied this rule to Hale's prosecutorial misconduct claim. *People v. Hale*, No. 243733, 2003 WL 22961696, at *1 (Mich. App. 2003). Accordingly, Hale's prosecutorial misconduct claim was procedurally defaulted by his failure to object to the prosecutor's remarks during closing argument. *See id.*; *see also Taylor v. McKee*, 649 F.3d 446,

451 (6th Cir. 2011) ("Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule."). However, a "[p]rocedural default can be avoided if a habeas petitioner can show" both "cause for the default and prejudice resulting from the default[.]" *Taylor*, 649 F.3d at 451. Thus, we must determine whether Hale can show cause and prejudice excusing this default. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

"To show cause, a petitioner must show that 'some objective factor external to the defense impeded . . . his efforts to comply with the State's procedural rule.'" *Burroughs v. Makowski*, 411 F.3d 665, 667 (6th Cir. 2005) (per curiam) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Hale argues that his procedural default should be excused because his trial counsel was constitutionally ineffective for failing to object to the prosecutor's remarks during closing argument.[1]

"An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not." *Hall*, 563 F.3d at 236–37 (citations omitted). Thus, we review this claim *de novo*.

---

[1] "Ineffective assistance of counsel can supply the cause that, together with prejudice, would excuse a procedural default." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). However, the government correctly identifies that the state court procedurally defaulted the ineffective assistance of trial counsel claim under Michigan Court Rule 6.508(D)(3)(b) because Hale should have raised the claim on direct appeal. *See Taylor*, 649 F.3d at 452 ("[D]efendants in Michigan may bring ineffective-assistance claims on direct appeal[.]"). In other words, Hale's ineffective assistance of trial counsel claim is *itself* procedurally defaulted. Hale argues that his appellate counsel was constitutionally ineffective for failing to bring this claim, and so he has cause and prejudice to excuse the default. A counsel's "failure to raise an issue on appeal" does not amount to ineffective assistance unless "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland*, 356 F.3d at 699. Therefore, this ineffective assistance of *appellate* counsel argument depends on the success of his ineffective assistance of *trial* counsel claim, and so we evaluate the merits of his ineffective assistance of trial counsel claim. *See id.*; *see also Altman v. Winn*, No. 14-2334, 2016 WL 1254049, at *4 (6th Cir. Mar. 31, 2016).

To establish ineffective assistance of trial counsel, Hale must show that (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–688 (1984). However, "[a] court need not assess counsel's deficient performance before considering prejudice, where the latter inquiry is an easier one." *Altman v. Winn*, No. 14-2334, 2016 WL 1254049, at *4 (6th Cir. Mar. 31, 2016) (citing *Strickland*, 466 U.S. at 697).

To show prejudice, Hale must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Hale has not shown that, had his counsel objected to the prosecutor's remarks, there is a reasonable probability that the result of the proceeding would have been different. The jury was instructed that the attorneys' closing arguments were not evidence. Additionally, there was substantial evidence against Hale. *See id.* at 695 (instructing courts to consider "the totality of the evidence before the . . . jury").

*Jury Instructions.* As the Michigan Court of Appeals noted, "any undue prejudice to defendant's trial was cured by the trial court's instructions to the jury that the questions and statements of the lawyers are not evidence and that the prosecutor must prove each element of the crime beyond a reasonable doubt." R. 30, Mich. Ct. App. at 4, Page ID 1435. The prosecutor's statements were not so extreme that the instructions given could not cure any prejudice that may have resulted from the prosecutor's closing argument. *See Johnson v. Bell*, 525 F.3d 466, 484–85 (6th Cir. 2008) (holding that the trial court's general instruction that closing arguments were not evidence was sufficient to cure any prejudice from the prosecutor's statements that his daughter attended the same school as the victim, that it "could have been my

little girl that was in that store," and that the victim could easily have been any of the jurors or their children "if we decided that we wanted to buy something from" that store).

*Substantial Evidence of Guilt.* The evidence presented at trial was substantial in establishing that Hale was not acting in self-defense. The evidence showed that Hale and his friend Rej got into a verbal dispute with Hardiman and his cousins and friend. The two parties continued the dispute outside, at which point both men became armed. Eventually, Hardiman pistol-whipped Hale in the head and the two fought. Rej fired a shot into the air, and Hardiman started to run away, leaving Hale on the ground. Hale then drew his gun and fired several shots at Hardiman, who fell to the ground. Hale stood up, walked over to Hardiman, and shot him several more times.

Hale argues that the hung jury in his first trial demonstrates that the evidence against him was not substantial. However, the central question during Hale's trial was whether or not he had acted in self-defense. *See, e.g.*, R. 30-2, Mich. Ct. App. Br. at 18–19, Page ID 1500 (characterizing the incident as "Defendant, fearing for his life, shot the armed deceased after the deceased got up off of him. Because the deceased was armed and had attacked him, Defendant, in self defense, shot at him several times"). Therefore, it is plausible that "the first jury was hung between first-degree and second-degree murder," not "between guilt and innocence." Appellee Br. 38–39. This is particularly true given the strength of the evidence against Hale. Additionally, the jury in Hale's second trial convicted him of second-degree murder, and not first-degree murder as the prosecution sought, which provides evidence that the jury decided the case based on the evidence before them and not on the prosecutor's remarks during closing argument.

Thus, Hale has not demonstrated that he was prejudiced by his trial counsel's failure to object to the prosecutor's statements during closing argument. Because his ineffective assistance of trial counsel claim fails, Hale does not have cause and prejudice to excuse the procedural default of his prosecutorial misconduct claim.

### V. Hale's Ineffective Assistance of Trial Counsel Claim

In his habeas petition and on appeal, Hale also brings his claim of ineffective assistance of trial counsel for failure to object to the prosecutor's closing argument as a freestanding claim. As discussed above, Hale's ineffective assistance of trial counsel claim is procedurally defaulted because Hale did not raise the claim on direct appeal. *See supra* note 1; *Taylor*, 649 F.3d at 452. Hale argues that this procedural default should be excused because his appellate counsel was ineffective for failing to bring this claim. However, because he cannot show that he was prejudiced by his trial counsel's failure to object, his appellate counsel was not ineffective on direct appeal for failing to raise the issue. *See McFarland*, 356 F.3d at 699. Therefore, Hale does not have cause and prejudice to excuse the procedural default of his ineffective assistance of trial counsel claim.

### VI. Hale's Ineffective Assistance of Appellate Counsel Claims

Hale also raised two claims of ineffective assistance of appellate counsel as independent grounds for habeas relief: (1) his appellate counsel did not appeal his prosecutorial misconduct claim to the Michigan Supreme Court on direct review; and (2) his appellate counsel failed "to consult with Hale about the pros and cons of [filing this discretionary appeal]." Reply Br. 13; *see* R. 41, Amended Petition at 11–12, Page ID 1721–22. [2]

---

[2] In addition, Hale argues that these two claims of ineffective assistance of appellate counsel excuse the procedural default of his prosecutorial misconduct claim for failing to appeal to the Michigan Supreme Court on direct review, advocating for an extension of *Martinez v. Ryan*, 132

*Failure to File.* Hale claims that his appellate counsel was constitutionally ineffective for failing to seek leave to appeal his prosecutorial misconduct claim to the Michigan Supreme Court on direct review. However, a criminal defendant does not have a constitutional right to counsel to pursue second, discretionary state appeals. *Ross v. Moffitt*, 417 U.S. 600, 610, 612 (1974). Because Hale had no constitutional right to counsel, he could not be deprived of the effective assistance of that counsel. *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982).

*Failure to Advise.* Hale also claims that his appellate counsel was unconstitutionally ineffective for failing to advise him on the merits of seeking leave to appeal his prosecutorial misconduct claim to the Michigan Supreme Court on direct review. "There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment." *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). Hale had no constitutional right to have his appellate counsel advise him on the merits of seeking leave to appeal to the Michigan Supreme Court. *See Torna*, 455 U.S. at 587–88. There is no principled difference between having counsel *represent* a defendant during a second, discretionary appeal and having counsel *advise* a defendant on *whether or not to seek* a second, discretionary appeal, and a criminal defendant does not have a constitutional right to counsel to pursue second, discretionary state appeals. *Ross*, 417 U.S. at 612. None of the cases that Hale cites indicate that he had a *freestanding* constitutional right to have his appellate counsel advise him of "the pros and cons of" filing a second, discretionary appeal. *See Gunner v. Welch*, 749

---

S. Ct. 1309 (2012). *See* Reply Br. 11–15. We need not address these arguments, however, because as discussed above his prosecutorial misconduct claim is procedurally defaulted by his trial counsel's failure to object.

F.3d 511, 519 (6th Cir. 2014); *Johnson v. United States*, 364 F. App'x 972, 975 (6th Cir. 2010); *Smith*, 463 F.3d at 433.

Because Hale did not have a constitutional right to have his appellate counsel advise him on the pros and cons of seeking leave to appeal to the Michigan Supreme Court, we reject this ineffective assistance of appellate counsel claim.

* * *

For the above reasons, we AFFIRM the district court's denial of Hale's petition for a writ of habeas corpus.